Good morning Your Honors. Council, may it please the court. I'm William McNeil. I represent the appellant Arnold Chew in this matter. We're here because of two statutory situations that deal with employment discrimination. As we all know, if one wants to take advantage of either the California Fair Employment and Housing Act or Title VII, one must file an administrative complaint. And the first reason why we're here is that the district court determined that Mr. Chew had failed to administratively exhaust his complaint. And it's our position that that's absolutely incorrect. The important consideration is that all of these administrative Supreme Court in La Vie Pullman and reiterated in the old Fifth Circuit with Sanchez v. Standard Brands and adopted by this court in Aubuchon. The idea being that because laypersons are of liberality, if you will. Indeed, I would posit for this court that Mr. Chew is the poster child for La Vie Pullman and Sanchez v. Standard Brands. Here, if the court looks at his declaration, one sees all of the things that he went through to try to file his charge. His charge identifies the basis of discrimination that he has. Are you referring to his first charge or the second superseding one? Both. Both charges, Your Honor. Certainly, the first charge, it goes into, I would say, excruciating detail about what Mr. Chew had been subjected to by the city and county of San Francisco at Laguna Honda Hospital and his supervisors. But the face of that charge says age and disability, correct? No, that's the second charge. April 22, 2013. That's the second charge. Did that not supersede the first one? Wasn't the first withdrawn? Well, he did sign a withdrawal. But if one reads the withdrawal, I think he did it with the supplementing his first charge. Because the language does not say, I just withdraw. Something is wrong with this charge at all. It says something to the effect that I will supplement this charge with further details. Do you have the record site for the document in which does the withdrawal? If the court would just bear with me while I find my glasses. Sure, sure. I think it would be AER 105-104. And what's the precise language? The precise language is that I will submit it. If you look at AER 96, the precise language is will refile complaint after meeting all prior categories. And I believe that's conditions. What that indicates to me is that he is going to refile it as a supplement to his first charge. But it doesn't say supplement. It says will refile and then repeat it again. I don't, I have a lot of stuff in front of me, but that precise language I do not. Will refile complaint after meeting all prior categories and conditions. Yeah, that doesn't say supplement. Well, but it indicates to me that it should be considered as it was sent to him. If you check his declaration, it was sent to him. It was not clear why it was sent to him. It was not clear what else he had to do. That's it. I'm sorry. I interrupted you. Go ahead. And if you, if one looks back at the steps he had to take, this is an instance where a lay person has gone through, as my mother would say, pillar to post, to try to file this with a new system regarding having to, having to submit stuff by computer. Mr. Chu had relied on Chef Collins to go down and you would talk to the people. The other thing I would like to point out to the court with the first charge was accepted. Otherwise, there would be no reason for them to ask for him to withdraw it. Well, with respect to the record to which you're referring, will refile complaint after meeting all prior categories and conditions. Above that, a box is checked asking that the investigation be discontinued. Is that concern? I didn't understand. Above that is a box that's asking to discontinue investigation for other reasons. Is that not a request by the appellant to discontinue the investigation? I think it's an instance where someone that does not understand the form and was told to check that and to make comments. I think, again, this goes back to the with regard to having to establish for some agency what discrimination you are trying to indicate took place. Let's assume for purposes of argument that that is exhausted. It seems to me on the merits that he may still lose. Well, that is to say, what discrimination has he shown in the evidence that he's presented? Well, he certainly showed that he was retaliated against. He certainly showed that there was this associational discrimination. Indeed, the court found associational discrimination. And what do you mean by associational discrimination? One of his problems was that Mr. Conniff-Klott did not like the fact that Mr. Chu assisted a black chef in trying to remediate his so-called limitations. Wait a minute. Does the evidence show that he didn't like he was doing it because he was black or he didn't like he was doing it because he should have been doing his own work? I think the evidence established that there was racial animus there. And what's the evidence of racial animus? I mean, I understand that he's instructed quit helping Mr. Collins with that computer stuff. Well, you've got enough trouble doing your own job. What is there that tells me that there's racial animus going on? If one looks at Mr. Conniff-Klott's declaration, where I inquire of him, he says that to Chef Collins, you know, this is another indication that you aren't doing anything. You haven't been trained properly. And I ask him, did you follow up with any training at all? Did you do anything in order to discipline it? What his response essentially was, no, I just let him dangle in the wind. To me, that is an instance of overt racial hostility. Counselor, could you keep close to the mic? I'm sorry, Your Honor. We keep a recording of this. No, no, I understand. I was just stating. Can we live stream out to the entire world? I apologize. I got a little involved. Wasn't he placed on a development plan in October 2012 as part, as alleged, ever to have him improve, assist him in improving his performance? Allegedly, he was put on a performance plan. But I would like to point out to the court, Mr. Chu, in each of his evaluations, got competent in all of his evaluations. And this all essentially started after his confrontation with Mr. Conniff-Klott about his assistance for Chief Chef Collins in 2011. He started having all of these things happen to him. And he complained about them, which his declaration shows. I would posit to the court that this is a situation of a microaggression directed toward him, which would be akin to a hostile work environment. He says in both of his charges, he talks about not having a non-racial environment so that the court, the administrative body, was put on notice of the fact that he was making these charges. What evidence do you submit is sufficient to show a tribal issue concerning pretext? Well, enough to establish, particularly in employment discrimination cases, that the reasons proffered may not be the real reason. And again, if one looks at this court's situation, says because intent is a very important component of any employment discrimination action, then the court should be somewhat hesitant to essentially rush into the fact that there normally is not a smoking gun with regard to this. And if one looks over Mr. Chu's declaration about the things that happened to him, if one also reads Chef Collins's declaration, it shows that there were a series, again, I would call them microaggressions, but certainly aspects of behavior that indicated the powers that be were out to get him. And indeed, he talks in his declaration about being told exactly that, that that was going to happen. I was hoping to reserve some time, but let me just also respond one little bit. I would notice that, indeed, the court found that he had established a prima facie case with regard to associational discrimination. And I think that we also established that there was just cause for a claim of retaliation. Okay. Why don't we hear from the other side, and then you will have some time. Thank you. I appreciate it, Your Honor. Good morning, Your Honors. May it please the Court. Amy Super for the City and County of San Francisco. I just wanted to point out that the crucial issue in this case, which I believe Your Honors have been correctly focusing on up until this point, is that the merits of this case show that there is no racial animus at all, and there is no evidence of retaliatory animus. Therefore, the plaintiff has failed to establish the final prongs of the McDonnell-Douglas framework with regard to associational discrimination and retaliation. That is the bottom line of the cases. With regard to Mr. McNeil's argument related to administrative exhaustion, I think the main distinction between the case law that he cites and the case that we have here today is that he speaks about liberally construing the DFEH complaints because they are to be filled out by laypersons of the Court. It is true that Mr. Chu, when he initially filed his claims, was a layperson. However, by 2013, he had an attorney. I am sorry, February 20th of 2014, the record shows that he had an attorney, and he had multiple years, in fact, to amend the complaint. At that point, I think that is where we... When you say the complaint, you mean the administrative charge? Yes. Yes. Either of the two administrative charges he could have amended at that time, and he was well represented from 2013. I'm sorry, February 20th of 2014 on. Ms. Zuber, are you familiar with the May 7, 2013 letter? I am. Why wasn't that sufficient to satisfy the requirements in the excerpt of record, starting at page 169? Why wasn't that sufficient to make clear what the charge was? Well, I think that there is contradictory case law on that point, but I still think that if you look at the cases cited by Mr. McNeil, there is evidence of allowing in supplemental documents in addition to the complaint. But again, these are laypersons, and so the court has been giving liberal interpretation to their efforts in that case. The May 7, 2013 letter was in the original record before the district court, correct? It was in the original record. Was it a basis upon which the appellant relied during the district court proceedings? No. The appellant did not make any arguments legally in the record below that that letter should be the basis for allowing the administrative exhaustion requirement to go forward. It was attached to a declaration, but there was no legal argument, and there was no argument at all related to that. And I put in my briefing as well that that should not be allowed to be an argument that he could make at this point. The city identified what it contended were non-protectual reasons for the actions taken with regard to Mr. Chu. What were they? So, I guess it would depend on which actions related to Mr. Chu. I'm trying to get to the point. Your argument is that you put forth non-protectual reasons, and Mr. Chu or counsel did not rebut them sufficiently to avoid McDonnell Douglas. Well, he hasn't shown any evidence of pretext for any of the conduct that Mr. Chu has alleged. So, for example, there are two suspensions on the record. There's no evidence of pretext. He has not fulfilled his burden on either of those. There is a performance plan, and there is a suspension for not adhering to the requirements of that performance plan, and there are two written warnings. I have seen no evidence of pretext for any of those. Can evidence that's sufficient to establish the Prima Facie case under McDonnell Douglas also be evidence of pretext? Well, under the case law, I don't believe that that is the way that it follows. So, the first thing for Mr. McNeil to do is to present the prongs of the McDonnell Douglas framework. Then we, as the city, are then required to present our legitimate business reasons, and then he must come back and present evidence of pretext. No, I understand that part, but my question really focuses on if there were compelling evidence hypothetically in establishing the Prima Facie case, and then the non-protextual reasons that were offered were unimpressive, could one consider the evidence that supported the finding that a Prima Facie case was shown in determining whether there was at least a tribal issue on pretext? I understand your question, Your Honor. Our argument all along has been that, in fact, he hasn't shown any compelling reasons. So, for example, with regard to the issue of whether or not there was discriminatory animus to satisfy the final prong of the McDonnell Douglas framework with regard to associational discrimination, as Your Honor has pointed out in your questions previously, there is no evidence of discriminatory animus towards Mr. Chu based on his association with Mr. Collins because of his race. So, our assertion is just because, you know, there may be many cases in employment law, cases where there is personal animus, there may be a difficult relationship, there may be a series of complicated difficult relationships, but personal animus or professional animus does not rise to the level required under... But I think your answer to Judge here on these facts, no. Correct. Okay. Let me ask another question. The appellate was employed from 1998 forward until now, correct? Still employed? That is correct. And there were certain employment issues between the year 2000 and 2012 that have been identified? Correct. But the... And the contacts with Mr. Collins started in 2011, is that right? Or the issues were raised concerning those contacts were first raised in 2011? There was one issue that was raised in 2011, correct? Then some discipline followed in the form of the development plan and then determining in 2012 and 2013 not enough progress under that plan. Are you with me so far? Yes. Is that evidence a pretext that if for several years there had been issues on performance but little action taken and then within a shorter time after the interaction with Mr. Collins, there were actions taken? Well, Your Honor, I would say that there are facts, additional facts that are relevant. So he was given a written warning in 2009, which was before Mr. Collins started working at Laguna Honda Hospital. He started in 2010. The infection warning. Exactly. He was given another written warning in May of 2010. The email from... That's the inattention to duty warning. Exactly. The email regarding Mr. Chu's instruction to stop helping Mr. Collins with his emails came in 2011. He was put on a performance plan a year later by a different supervisor. So I think already we have a year's passage of time and then he was disciplined for failing to adhere to that performance plan a year after that. So I don't see any evidence of pretext here. I think enough time has passed in between each of these events. The other thing I might add is that, again, Mr. Konofklat, as you stated earlier, instructed Mr. Chu not to help Mr. Collins with his emails because of Mr. Chu's own performance issues, which have been well documented up until that point. There's no evidence of any racial animus. Mr. Collins and that no one ever made any comment about their association or either of their races at any time. Was the assistance being provided during Mr. Chu's rest and meal breaks? That is not in the record. I would also add that Mr. Chu... I'm sorry, Mr. Collins also testified in his deposition that other people helped him with his emails and his computer because it was known that he did not have computer skills. None of them received any adverse actions, any criticism, anything at all that he knew about. And other people also testified in their own depositions that they helped Mr. Collins with their emails and were not disciplined for it. The final thing that we might add is that with regard to retaliation, there really is no protected conduct here that Mr. Chu can point to with regard to any of the adverse actions that have been taken against him. I think that he's attempting to say that his helping Mr. Collins with his emails and his computer skills was protected in some way because Mr. Collins was African American, and that's simply not what the The case law says that you must be protesting something which is prohibited by the statutes under Title VII and FEHA. So you have to be complaining of discrimination based on a protected category, harassment based on a protected category, or retaliation based on a protected category. He complained of not being allowed to help a colleague, quite simply, and at no point did he mention Mr. Collins's race or did anyone mention Mr. Collins's race. So this is simply an internal workplace disagreement. And I would add that he continued, he stated in his email he would continue to help Mr. Collins with his emails, and he did so and he was never disciplined for doing so. Okay. Thank you. Thank you very much. Thank you. Mr. McNeil, you've saved some time. If I may, Your Honor. Please. Just to respond to certain things. Certainly, if one looks at Burlington Northern as the prototypical situation with regard to retaliation now, it would be actions that would cause people pause to do things. And indeed, Mr. Chu's declaration indicates that. Mr. Collins's declaration indicates that, indeed, the treatment of Mr. Chu is one of the reasons why he retired early. Not the sole reason, I will grant you that, but certainly one of the reasons. Again, as Judge Kronstadt, I hope it's close to the pronunciation. You're doing fine. Thank you. Indicated, he goes along quite well for a number of years, and then after 2001, suddenly these things start popping up. 2001 or 2011? Well, 2011. I apologize. I think under Sanderson's plumbing, there is an indication that that would undercut the pretext and the idea being, again, not to establish absolute proof, but to present this to a fact finder, namely a jury, as to whether that would be part of what was motivating the people in treating Mr. Chu the way he was. And again, Mr. Chu's declaration, Chef Collins' declaration indicate that there are a number of things that happened to him during that period of time. You're over time, so if you'd like to sum up. I would just like to sum up, Your Honor, saying that there is enough evidence to warrant overturning the summary judgment motion and decision here. Thank you very much for your time. Both sides for your arguments. Chu versus City and County of San Francisco submitted for decision. The last case on the argument calendar this morning, Capay versus NLRB.
judges: Hawkins, W. Fletcher, Kronstadt